IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| NORTH WIND FABRICATION, INC. § | | PLAINTIFF |
| § | | |
| v. § | Civil Action No. 1:09cv682-LG-RHW | |
| § | | |
| PRUCO LIFE INSURANCE § | | |
| COMPANY § | | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**BEFORE THE COURT** is the Motion for Summary Judgment [52] filed by Pruco Life Insurance Company.  Pruco asserts that the life insurance policy it issued to Dwight E. Braxton is void *ab initio* due to material misrepresentations made in the policy application.  In the alternative, Pruco argues that it is entitled to partial summary judgment as to the beneficiary's claim of bad faith, because it had an arguable and legitimate reason for denying the claim.  The plaintiff and beneficiary, North Wind Fabrication, Inc., has filed a response in opposition to the Motion, and Pruco has filed a reply.  Upon reviewing the submissions of the parties and the applicable law, the Court finds that the Motion should be granted as to North Wind's bad faith claim and denied in all other respects.

FACTS

On January 24, 2007, Dwight E. Braxton completed an application for a Pruco $500,000 term life insurance policy.  (Ex. 5 to Def.'s Mot.)  On the application, he denied ever being diagnosed with or treated for chest pain, high blood pressure, or any disorder of the heart or blood vessels.  (*Id.*)  It is undisputed that he continued to deny that he

had been treated for these ailments on multiple occasions throughout the application process, including during a medical exam required by Pruco and a telephonic interview. (Ex. 5-8 to Def.'s Mot.)  Braxton was placed in the Preferred Best Premium Class based on Pruco's underwriting guidelines, which resulted in a premium of $1205 per year. (Ex. 9 to Def.'s Mot. at 22, 23, 49-52; Ex. 10 to Def.'s Mot.)  North Wind Fabrication, a company partially owned by Braxton, was the owner and beneficiary of the policy.

On November 14, 2007, Braxton died of acute myocardial infarction as a consequence of coronary artery disease during a heart catheterization performed by Dr. Bassam Baroudi at Memorial Hospital.  (Ex. 3 to Def.'s Mot.)  Because Braxton's death occurred less than two years after the policy was issued, North Wind's claim for benefits under the policy was considered a contestable claim by Pruco.  (Ex. 2 to Def.'s Mot. at 8, 16).  Therefore, Pruco obtained Braxton's medical records, including those depicting his treatment by Dr. Baroudi, and learned that Braxton had been referred to Dr. Baroudi in 2004 for a consult and stress test due to a family history of heart disease as well as complaints of occasional shortness of breath, chest pain, and an elevated lipid panel revealing high LDL cholesterol.  (Ex. 14 to Def.'s Mot.; Ex. 16 to Def.'s Mot. at 11, 51).  Braxton's first visit to Dr. Baroudi occurred on May 13, 2004, and Dr. Baroudi's impressions were: (1) chest pain suggestive of angina, (2) hypercholesterolemia, and (3) borderline hypertension.  (Ex. 14 to Def.'s Mot.; Ex. 16 to Def.'s Mot. at 13).  Dr. Baroudi prescribed lipitor for the high cholesterol, the beta blocker Toprol for the high blood pressure, and ecotrin, which is an aspirin and platelet inhibitor that is recommended for patients with high blood pressure.  (Ex. 14 to Def.'s Mot.; Ex. 16 to Def.'s Mot. at 16-

18).

Dr. Baroudi also performed a stress test and an echocardiogram. Braxton exercised well during the stress test. The echocardiogram study revealed the presence of either scarring in the inferior wall, which could indicate a past heart attack, or diaphragmatic attenuation, which merely means the diaphragm is pushed up to where it covers part of the heart. (Ex. 14 to Def.'s Mot.; Ex. 16 to Def.'s Mot. at 21-25). On June 25, 2004, Dr. Baroudi met with Braxton to discuss the test results and devise a course of treatment. (Ex. 14 to Def.'s Mot.; Ex. 16 to Def.'s Mot. at 30). When he arrived for the appointment, Braxton reported that he felt well with no complaints, and had not had any more chest pain or shortness of breath. (Ex. 14 to Def.'s Mot.) Dr. Baroudi testified at his deposition in this case that he explained to Braxton that tests are not one hundred percent accurate and further evaluation would be needed if the chest pain continued. (Ex. 16 to Def.'s Mot. at 31-32). He opined that the only test that gives a true and complete answer regarding the condition of the heart is a catheterization. (*Id.*) Dr. Baroudi's medical record from this visit states:

> I have discussed the results of the stress test with Mr. Braxton and explained to him the possibility of coronary artery disease especially involving the inferior wall. On the other hand, patient had a very good exercise capacity and exercised for 11 minutes which gives him a good prognosis.
>
> We discussed treatment options – cardiac catheterization versus medical therapy. Patient elected medical therapy. We will maximize lipid management, continue to control his BP, keep him on beta-blocker and an aspirin, and I will see him back in 3 months. At 6 months to a year, a follow up stress test to assess the coronaries would be of help. Meanwhile if patient develops any chest pain or any symptoms of angina then cardiac catheterization would be strongly recommended.

(Ex. 14 to Def.'s Mot.) Dr. Baroudi listed his impressions as: "(1) HTN [hypertension]– borderline, well controlled. (2) Hyperlipidemia. On Lipitor. (3) Angina – stable, non [sic] more angina." (Ex. 14 to Def.'s Mot.)

Pruco utilizes a debit and credit system in order to classify insureds at a particular rating, which in turn determines the amount of premium charged for the policy. (Ex. 20 to Def.'s Mot. at 49-50). Debits are assessed as a result of risk factors that increase the chances that an insured's health history will contribute to his of her death. (*Id.*) Pruco employees determined that the reference to angina in Dr. Baroudi's medical records concerning Braxton would have resulted in a debit of 100 under Pruco's underwriting guidelines if Braxton had answered the questions in the application correctly. (Ex. 9 to Def.'s Mot. at 71; Ex. 21 to Def.'s Mot.) A debit of 100 would have resulted in a Class C premium classification for Braxton's policy and a higher premium. (Ex. 9 to Def.'s Mot. at 85). Pruco claims that the Class C premium for Braxton would have been $4720.00. (Ex. A to Def.'s Reply at 1). As a result, Pruco rescinded the policy and denied North Wind's claim for benefits under the policy.

North Wind filed the present lawsuit against Pruco, alleging breach of contract, breach of the covenant of good faith and fair dealing, and tortious breach of contract. It seeks contractual damages, extra-contractual damages, and punitive damages.

## DISCUSSION

Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and

upon which the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

"Under Mississippi law, if an applicant for insurance is found to have made a misstatement of material fact in the application, the insurer that issued a policy based on the false application is entitled to void or rescind the policy." *Carroll v. Metropolitan Insurance & Annuity Co.*, 166 F.3d 802, 805 (5th Cir. 1999). In order to establish that a material misrepresentation was made, an insurer must prove by clear and convincing evidence that (1) the application contained false, incomplete, or misleading answers, and (2) "the false, incomplete, or misleading answers must be material to the risk insured against or contemplated by the policy." *Carroll*, 166 F.3d at 805. The insurer is not required to prove that the misrepresentation was intentional, and even misrepresentations caused by negligence or mistake can result in rescission. *Id.*

> A misrepresentation in an insurance application is material if knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk. Stated differently, a fact is material if it might have led a prudent insurer to decline the risk, accept the

>risk only for an increased premium, or otherwise refuse to issue the exact policy requested by the applicant.

*Id.*

North Wind disagrees with the Fifth Circuit's determination in *Carroll* that a misrepresentation that would have led to an increased premium is material. However, the *Carroll* decision sets forth the Fifth Circuit's interpretation of Mississippi law regarding material misrepresentations, and this Court is bound to follow Fifth Circuit precedent. Furthermore, the Court notes that the Mississippi state courts have repeatedly held that a misrepresentation that affects either the insurer's acceptance of the risk *or* the hazard assumed by the insurer is material. *See, e.g., Hancock v. Mid Amer. Ins. Servs., Inc.*, 836 So. 2d 762, 765 (¶12) (Miss. 2003). A misrepresentation concerning the existence of serious health problems would potentially affect the hazard assumed by the insurer even if the insurer would have merely issued a policy with a higher premium had it known of the condition.

North Wind next argues that the disclosure of Braxton's chest pain and related testing would not have resulted in an increased premium under Pruco's underwriting guidelines. The guidelines provide that a diagnosis of "angina pectoris" that is based on classical symptoms would result in a debit of 100. (Ex. 21 to Def.'s Mot.) However, the symptom of chest pain is sometimes rated differently from angina. (*Id.*) "Atypical" chest pain is, according to the guidelines, not clearly heart-related pain, but it causes the underwriter more concern. (*Id.*) This concern may be caused by chest pain that occurs in a "high risk setting," such as a strong family history of heart disease,

hypertension, or abnormal lipids. (*Id.*) The guidelines provide that cases classified as suspicious should be rated under the angina pectoris schedule with 100 debits assessed, but a credit of 0 to 100 may be assessed based on the severity of the risk factors where stress tests, echocardiograms, and other studies of the heart have normal results. (*Id.*)

North Wind argues that Braxton's negative stress test and the results of the echocardiogram should have resulted in credits being applied, particularly since Braxton's cardiologist, Dr. Baroudi, testified in a deposition that, in retrospect, he would not have considered Braxton's 2004 diagnosis to be angina. (Ex. 16 to Def.'s Mot. at 40). He would have classified it as chest pain that was stable. (*Id.*) He also stated that he did not make a definitive diagnosis of angina when he saw Braxton in 2004, and he explained that "angina" can have different meanings to different people. (*Id.* at 15, 53-54). He noted that angina pain is pain that could be related to the heart, but it is not a definitive diagnosis of heart disease. (*Id.* at 15). North Wind also argues that the 2004 diagnoses of "CP [chest pain]- suggestive of angina" and "angina– stable, non [sic] more angina" were insufficient to justify 100 debits under the angina scale. (Ex. 15 to Def.'s Mot.)

The Court finds that a fact question exists regarding whether Braxton had angina or chest pain of an undetermined origin in 2004. If Braxton merely had chest pain, he could have been entitled to credits under the underwriting guidelines. The Court cannot determine the number of credits that would have been given if the diagnosis was chest pain from the record before it. Thus, Pruco has not demonstrated that the misrepresentation was material by clear and convincing evidence. *Carroll*,

-7-

166 F.3d at 805. For example, if 100 debits and 100 credits should have been applied, no change in premium would have resulted. As a result, the Court must deny summary judgment and allow a jury to make these determinations.

Pruco also seeks partial summary judgment regarding North Wind's claim for breach of the covenant of good faith and fair dealing, *i.e.* its claim for punitive damages. The issue of whether an insured should recover punitive damages for an insurer's bad faith should not be submitted to a jury unless the trial court determines that there are jury issues with regard to whether: (1) the insurer lacked an arguable or legitimate basis for denying the claim, and (2) the insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 634 (¶104) (Miss. 2007). An "arguable reason" is defined as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to [the] heightened level of an independent tort." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1096 (Miss. 1996) (quoting *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 293 (Miss. 1992)). "Where an insurance carrier denies or delays payment of a valid claim, punitive damages will not lie if the carrier has a reasonable cause for such denial or delay." *Merrill*, 978 So. 2d at 634 (¶106). "[W]here the parties dispute the existence and legitimacy of the carrier's reason for delay or denial, these issues are ones of material fact, and the plaintiff is entitled to have a jury pass upon his claim for punitive damages if reasonable minds could differ as to the legitimacy of the carrier's reason." *Id.* The Court finds that Pruco had an arguable basis for denying North Wind's claim. The medical records reference "angina" on multiple occasions, and thus, Pruco had an

arguable basis for rating Braxton's policy under the angina scale in the underwriting guidelines. Furthermore, there is no evidence of gross or reckless disregard or malice on the part of Pruco.

Finally, the Court notes that Pruco did not seek partial summary judgment regarding North Wind's tortious breach of contract claim, but only argued that it would be entitled to summary judgment as to that claim if the Court found that there was no breach of contract as a matter of law. The Court has found that a genuine issue of material fact exists regarding the breach of contract claim, and Pruco has not asserted other grounds for granting summary judgment regarding the tortious breach of contract claim. Therefore, the breach of contract claim and tortious breach of contract claim remain pending.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [52] filed by Pruco Life Insurance Company is **GRANTED** as to North Wind's bad faith claim, and is **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 12th day of October, 2010.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE